**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**COREY BERNARD PRYOR,**
    **Petitioner,**

**v.**                      **Case No. 1:16cv245-WTH/CAS**

**FLORIDA DEPARTMENT OF
CORRECTIONS SECRETARY,**
    **Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On June 17, 2016, Petitioner Corey Bernard Pryor, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1.   On April 14, 2017, Respondent filed an answer and exhibits. ECF No. 15.   Petitioner filed a reply on July 14, 2017.   ECF No. 18.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).   After careful consideration of all issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.   *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.   For the reasons stated herein, the pleadings and attachments before the Court show Petitioner is not entitled to federal habeas relief, and this § 2254 petition should be denied.

## Background and Procedural History

On April 14, 2008, a grand jury in the Eighth Judicial Circuit, Alachua County, Florida, returned an indictment charging Petitioner Corey Bernard Pryor with eight counts in case number 01-2008-CF-001606, in connection with events that took place on or about March 18, 2008, involving the death of Vearl Ingram:   (1) first degree murder with a firearm, a life felony and 10-20-Life offense, contrary to sections 782.04(1)(a), 784.021, and 775.087, Florida Statutes; (2) possession of a firearm by a violent career criminal, a first degree felony, contrary to sections 790.235(1) and 775.084, Florida Statutes; and (3) possession of a firearm by a convicted felon, a second degree felony and 10-20-Life offense, contrary to sections 790.23(1) and 775.087(2), Florida Statutes; and (4) five counts of tampering with physical evidence, third degree felonies, contrary to section 918.13(1)(a), Florida Statutes.   Ex. C at 72-76.[1]   Pryor proceeded to a jury trial and, on June 18, 2009, the jury found him guilty, on Count 1, of the lesser included offense of second degree murder and guilty as charged on

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 15.

the remaining counts.   Ex. D at 286-89.   The court adjudicated him guilty and sentenced him to consecutive terms of natural life in prison on Counts 1 and 2, a concurrent term of fifteen (15) years in prison on Count 3, and concurrent terms of five (5) years in prison on each of the remaining counts, with jail credit for 17 months.   *Id.* at 290-303.

Pryor appealed his judgment and sentence to the First District Court of Appeal (DCA), assigned case number 1D09-3208.   In an opinion filed November 22, 2010, the First DCA reversed Pryor's conviction for second degree murder (Count 1) and remanded for a new trial on that count.   Ex. A; Pryor v. State, 48 So. 3d 159 (Fla. 1st DCA 2010).   The court also reversed and remanded, with directions that the trial court vacate Pryor's conviction and sentence for possession of a firearm by a convicted felon (Count 3).   Pryor, 48 So. 3d at 162.   The court affirmed the appeal in all other respects.   *Id.* at 163.

On remand, Pryor was re-tried for the offense of second degree murder and found guilty as charged on May 19, 2011.   Exs. L, M, N, O (trial transcript); Ex. L at 819-20, Ex. E at 523 (verdict).   The jury specifically found that, during the commission of the murder, Pryor carried

a firearm, discharged a firearm, and the discharge of the firearm resulted in the death of the victim.    Ex. L at 819-20, Ex. E at 523.    The court adjudicated Pryor guilty and sentenced him to life in prison.    Ex. D at 470-71, Ex. E at 472-73.    Pryor appealed to the First DCA, assigned case number 1D11-2783.    Ex. P (Initial Brief); Ex. Q (Answer Brief).    On May 18, 2012, the First DCA affirmed the case without a written opinion.    Ex. R.

On November 19, 2012, Pryor filed a Motion for Post-Conviction Relief pursuant to Florida Rule of Criminal Procedure 3.850.    Ex. S at 1-33.    He subsequently filed another Rule 3.850 motion, *id.* at 45-82, as well as a motion to accept it as timely filed, *id.* at 42-44.    The state trial court denied post-conviction relief by order on March 30, 2015.    Ex. S at 161-76. Pryor appealed and filed an initial brief, assigned case number 1D15-2050. Ex. X.    The First DCA affirmed the case without a written opinion on October 7, 2015.    Ex. Z.    The mandate issued on December 3, 2015.    Ex. CC.

As indicated above, Pryor filed a § 2254 petition in this Court on June 17, 2016.    ECF No. 1.    He raises twelve grounds, all alleging ineffective assistance of counsel (IAC):

(1) **IAC – Inadequate Motion for Judgment of Acquittal**:   At the close of the State's case, defense counsel moved for a judgment of acquittal on Counts 1 and 4 through 8, but not on Counts 2 and 3.   *Id.* at 7.   The State failed to prove beyond a reasonable doubt that Pryor actually possessed a firearm.   *Id.*

(2) **IAC – Defendant's Right to Testify**:   Defense counsel "failed to adequately inform the Petitioner about testifying resulting in the Petitioner not making an informed decision when deciding not to testify."   *Id.* at 8.   "Based on counsel's information, the Petitioner believed that if he would have testified that by the jury hearing that he had been convicted of the prior assault and batteries that this would inflame the jury and he would be found guilty."   *Id.*

(3) **IAC – No Motion to Sever**:   Defense counsel should have filed a motion to sever the offenses of possession of a firearm by a violent career criminal and possession of a firearm by a convicted felon.   *Id.* at 11.

(4) **IAC – No Defense Witnesses**:   Defense counsel failed to call available witnesses during the trial:   Raymond Deats, Michelle Moldren, Salvacian Powell, and Jonathan Taylor. *Id.* at 12-16.

(5) **IAC – No Jurisdiction**:   Defense counsel failed to argue the trial court did not have jurisdiction because Pryor's appeal was pending discretionary review in the Florida Supreme Court.   *Id.* at 17-18.

(6) **IAC – Inadequate Pretrial Investigation**:   Defense counsel failed to conduct an adequate pretrial investigation. *Id.* at 20.   Counsel should have subpoenaed the videotape from the Gate Food Store, which would have helped show Pryor was not the person in the video still photos.   *Id.*

(7) **IAC – No Video Expert**:   Defense counsel should have requested a video expert to testify during the trial regarding the Gate Food Store video and the photo stills taken from the video.   *Id.* at 22.

(8) **IAC – Faith Brady**:   Defense counsel failed to call Faith Brady to testify during the trial.   *Id.* at 24.   She was available and would have testified Pryor did not enter the store.   *Id.*

(9) **IAC – Police Misconduct**:   Defense counsel should have objected and moved the trial court to dismiss the charges based on police misconduct in not providing the defense with the names of any witnesses Detective Barber spoke to while investigating the case.   *Id.* at 26-27.

(10) **IAC – Suppression of Security Gate Log**:   Defense counsel failed to object and move the court for a dismissal because the State suppressed the security gate log from the Madison Point Apartments.   *Id.* at 28-29.

(11) **IAC – No Objection to Heather Troncale's Testimony**: Defense counsel failed to object to Troncale's improper hearsay testimony being admitted during the trial.   *Id.* at 31-33.

(12) **IAC – Cumulative**.   *Id.* at 34-35.

Respondent filed an answer, with exhibits.   ECF No. 15.   Pryor has filed a reply.   ECF No. 18.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody.   Section 2254(d)

provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim –
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).   *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011).   "This is

a 'difficult to meet' and 'highly deferential standard for evaluating state-

court rulings, which demands that state-court decisions be given the benefit

of the doubt.'"   Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562

U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

This Court's review "is limited to the record that was before the state court

that adjudicated the claim on the merits."   *Id.*

For claims of ineffective assistance of counsel (IAC), the United

States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.   This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.   Second,
> the defendant must show that the deficient performance
> prejudiced the defense.   This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).   To demonstrate

ineffectiveness, a "defendant must show that counsel's performance fell

below an objective standard of reasonableness."   *Id.* at 688.   To

demonstrate prejudice, a defendant "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."   *Id.* at 694.   "A reasonable

probability is a probability sufficient to undermine confidence in the

outcome."   *Id.*   For this Court's purposes, importantly, "[t]he question 'is

not whether a federal court believes the state court's determination' under

the Strickland standard 'was incorrect but whether that determination was

unreasonable – a substantially higher threshold.'"   Knowles v. Mirzayance,

556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473

(2007)).   "And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."   *Id.*   It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard."   *Id.*

### <u>Ground 1</u>: IAC – Inadequate JOA Motion on Counts 2 and 3

In his first ground, Petitioner Pryor asserts defense counsel provided ineffective assistance by not adequately moving for a JOA on Counts 2 and 3 at the close of the State's case.   ECF No. 1 at 7.   Petitioner asserts the State "failed to prove beyond a reasonable doubt that the Petitioner actually possessed a firearm by definition."   *Id.*   He "denies that he possessed the firearm or that he killed the victim."   *Id.*

The state post-conviction court summarily denied this claim, making the following findings:

> Defendant alleges that trial counsel was ineffective for making an inadequate motion for judgment of acquittal.   According to Defendant, but for counsel's boilerplate motions for judgment of acquittal there is a reasonable probability that the outcome of this case would have been different.   However, the gist of Defendant's claim is that the evidence presented at trial was insufficient to support his convictions.   A defendant cannot challenge the sufficiency of the evidence underlying his convictions through a rule 3.850 motion, especially where there has been a direct appeal.   <u>Betts v. State</u>, 792 So. 2d 589, 590

> (Fla. 1st DCA 2001); *see also* <u>Johnson v. State</u>, 593 So. 2d
> 206, 208 (Fla. 1992) ("[i]ssues which either were or could have
> been litigated at trial and upon direct appeal are not cognizable
> through collateral attack").   Motions filed under rule 3.850
> "cannot be utilized for a second appeal."   <u>Jones v. State</u>, 446
> So. 2d 1059, 1061-62 (Fla. 1984).   Because Defendant fails to
> show any actual prejudice caused by counsel's failure to file a
> legally sufficient motion for judgment of acquittal, the claim
> raised is without merit.

Ex. S at 165-66.   On appeal, the First DCA affirmed without a written

opinion.   This constitutes a ruling on the merits and is entitled to AEDPA

deference.   *See* 28 U.S.C. § 2254(d); <u>Harrington</u>, 562 U.S. at 98-100.

The state post-conviction court denied this claim on an independent

and adequate state ground.   Accordingly, it is barred from consideration in

federal habeas.   *See, e.g.*, <u>Harmon v. Barton</u>, 894 F.2d 1268, 1273 (11th

Cir. 1990) (concluding that state appellate court's "per curiam affirmance of

the trial court's ruling explicitly based on procedural default is a clear and

express statement of its reliance on an independent and adequate state

ground which bars consideration by the federal courts").

Moreover, even considering the claim, the First DCA vacated Pryor's

conviction and sentence on Count 3, possession of a firearm by a

convicted felon.   <u>Pryor</u>, 48 So. 3d at 162.   Further, on Count 2, the State

did present sufficient evidence to support Pryor's conviction for possession

of a firearm by a violent career criminal, a first degree felony, contrary to
sections 790.235(1) and 775.084, Florida Statutes.

In particular, section 790.235(1), Florida Statutes (2007), provides, in
pertinent part:

> Any person who meets the violent career criminal criteria under
> s. 775.084(1)(d), regardless of whether such person is or has
> previously been sentenced as a violent career criminal, who
> owns or has in his or her care, custody, possession, or control
> any firearm, ammunition, or electric weapon or device, or
> carries a concealed weapon or device, commits a felony of the
> first degree, punishable as provided in s. 775.082, s. 775.083,
> or s. 775.084.

The parties in this case had stipulated in writing that Pryor "was an
individual who met certain specific statutory criteria as a violent career
criminal on and prior to March 18th 2008."   Ex. J at 535; *see id.* at 544,
547-48.   In the first verdict in the first trial, the jury specifically found, in
Count 1, Pryor had, in the course of committing second degree murder,
actually possessed a firearm and discharged a firearm.   *Id.* at 541.[2]   And,
in Count 4, the jury found Pryor guilty of tampering with physical evidence,
a firearm.   *Id.* at 542.   After the jury returned these verdicts, the trial court

---

[2]In the retrial on this count, the jury returned a verdict finding Pryor guilty as charged of
second degree murder.   Ex. L at 819.   The jury specifically found that, during the
commission of the murder, Pryor carried a firearm on his person and discharged the
firearm, resulting in the victim's death.   *Id.* at 819-20.

explained the jury had to consider two additional counts, Counts 2 and 3. *Id.* at 543-47. The court further explained the parties' stipulation, which went to the first element of the offense, satisfaction of the violent career criminal criteria. *Id.* at 548. The prosecutor presented a brief argument, asserting that, given the verdict already handed down, in which the jury found Pryor guilty of actually possessing and discharging a firearm, the jury had essentially already found Pryor possessed a firearm within the meaning of section 790.235(1), Florida Statutes. *Id.* at 548-49. Defense counsel relied on arguments he previously made to the jury. *Id.* at 549. The jury returned a verdict finding Pryor guilty of possession of a firearm by a violent career criminal. *Id.* at 551.

Petitioner Pryor has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

## <u>Ground 2</u>:   IAC – Defendant's Right to Testify

In his second ground, Petitioner Pryor asserts his trial counsel provided ineffective assistance by failing "to adequately inform the

Petitioner about testifying resulting in the Petitioner not making an informed decision when deciding not to testify."   ECF No. 1 at 8.   Petitioner asserts that, based on the information counsel provided, "Petitioner believed that if he would have testified that by the jury hearing that he had been convicted of the prior assault and batteries that this would inflame the jury and he would be found guilty."   *Id.*   In his reply, Petitioner appears to focus his claim on the second trial as he asserts that if he had "testified in his own behalf he would have been able to defend himself and testify as to his where about and alibi to defend against this charge of second degree murder."   ECF No. 18 at 6.

The state post-conviction trial court summarily denied this claim, making the following findings:

> Defendant alleges that trial counsel was ineffective for failing to adequately inform Defendant of his right to testify.   During both his trials, counsel placed on the record the fact that he had advised Defendant not to testify; and, that Defendant agreed with counsel's advice not to testify.   *See* Trial (June 2009) Transcript at 431 (lines 23-25) – 433 (lines 1-10); Trial (May 2011) Transcript at 494 (lines 24-25) – 496 (lines 1-11). According to Defendant, he chose not to testify because counsel purportedly told him that the details of his prior convictions would be made available to the jury.   Defendant contends that had he known that the underlying facts of his prior convictions could not have been presented, he would have testified that he did not commit the charged offenses (that is the total of Defendant's proposed testimony).

"Where counsel incorrectly informs a defendant regarding the use of prior convictions as impeachment, specifically, that upon testifying the jury will hear the specific nature of the prior convictions, and the defendant shows that because of the misinformation he did not testify, he has satisfied the deficient performance prong of an ineffective assistance of counsel claim." Tyler v. State, 793 So. 2d 137, 141 (Fla. 2d DCA 2001) (citing Everhart v. State, 773 So. 2d 78, 79 (Fla. 2d DCA 2000)). Here, even assuming that counsel did err, Defendant fails to show any prejudice because his proposed testimony does not refute the evidence put on by the State during his trials, which included: (1) the testimony of eye witnesses; (2) the testimony of the person whom Defendant asked to dispose of the gun; (3) the testimony of the person who helped Defendant dispose of the victim's body; (4) Defendant's business card in the victim's pocket; (5) physical evidence of the murder outside of Defendant's apartment; and, (6) Defendant's denial that he knew the victim. See Trial (June 2009) Transcript at 83-125, 130-170, 172-179, 190-209, 213-221, 224-289, 321-323, 394-420, 435-441, 446-484, 507-516; Trial (May 2011) Transcript at 56-130, 132-147, 149-152, 155-167, 176-200, 202-210, 214-281, 408-414, 421-422; Closing Arguments, Verdict and Sentencing (May 2011) Transcript at 16-41, 67-76. Given the sheer volume of evidence supporting his guilt, there is not a reasonable probability that the jury would have acquitted Defendant had he merely testified that he did not commit the charged offenses. Accordingly, the claim raised is without merit.

Ex. S at 166-67. On appeal, the First DCA affirmed without a written opinion. This constitutes a ruling on the merits and is entitled to AEDPA deference. See 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 98-100.

The state court record supports the findings of the post-conviction

court that, during both trials, defense counsel placed on the record that he

had advised Pryor not to testify and that Pryor agreed with counsel's advice

not to testify.   *See* Ex. J at 431-33 (June 2009 trial); Ex. O at 494-96 (May

2011 trial).   In particular, during the second trial, the following transpired

on the record:

> MR. BERNSTEIN [defense counsel]:   I would ask one more
> thing of the Court.   I'd like to address on the record and before
> the Court with Mr. Pryor – He has an absolute right to testify.
>
> THE COURT:   Certainly.   Why don't we do that?
>
> MR. BERNSTEIN:   And he and I have had discussions about
> that, and I've given him very definite advice.   So before we
> proceed any further, I think that we should address that issue.
>
> THE COURT:   Go right ahead.
>
> MR. BERNSTEIN:   Mr. Pryor, I just want to, for the record, you
> and I have discussed that you have the right to testify in this
> case.   And I've given you advice, based on what I know about
> the evidence, what we've talked about about evidentiary
> concerns, what you can testify about and what you would not
> be permitted to testify about.
>
>        In particular, you would not be able to address what's in
> police reports, inconsistencies between this report or that report
> or witnesses, anything that you were not a direct witness to.
>
>        That your denial is in the record in the form of the
> statement that's already before the Court, and that there are
> certain concerns about your prior record and this new allegation

of what Mr. Davis came up with that you may be subject to cross-examine about if you got on the stand and testified.

Based on those, I've advised you not to testify. I need for you to advise the Court whether that – you're going to take that advice or whether you would want to insist on your right to testify.

THE DEFENDANT:   One, I don't have no involvement in this crime.   Two, I don't know nothing about it.   So what I would testify to would be in the police reports and the depositions based on other statements.

MR. BERNSTEIN:   Well, at this point, then, are you going to follow my advice and we will rest without having you testify?

THE DEFENDANT:   Yeah.

MR. BERNSTEIN:   All right.   Thank you, your Honor.

Ex. O at 495-96.

The state post-conviction court further determined that, even assuming defense counsel erred in informing Pryor regarding the use of his prior convictions, Pryor did not show any prejudice because his proposed testimony would not have refuted the State's evidence.   As the state court found, in his filings in state court, Pryor asserted only that he would have testified that he did not commit the charged offenses.   *See* Ex. S at 12, 50. Pryor offers essentially the same proposed testimony in his § 2254 petition, denying involvement in the offenses.   *See* ECF No. 1 at 9.   As the state

court found, however, given the strong evidence presented by the State, *see* the analysis of Ground 4, *infra*, no reasonable probability exists the jury would have decided the case differently if Pryor had testified as he states.

Petitioner Pryor has not shown that the state court's rejection of this claim involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this claim should be denied.

### Ground 3:   IAC – No Motion to Sever

In his third claim, Petitioner Pryor argues his trial counsel provided ineffective assistance by not filing a motion to sever the charges of possession of a firearm by a violent career criminal and possession of a firearm by a convicted felon.   ECF No. 1 at 11.   The post-conviction court summarily denied this claim, making the following findings:

> Defendant alleges that trial counsel was ineffective for failing to move to sever the charges of Possession of a Firearm by a Violent Career Criminal and Possession of a Firearm by a Convicted Felon.   The record reflects that the charges of Possession of a Firearm by a Violent Career Criminal and Possession of a Firearm by a Convicted Felon were bifurcated from the remaining charges.   *See* Verdict #2 (filed June 18, 2009).   Thus, the jury did not know that Defendant was a convicted felon until after he was found guilty of the other offenses.   Furthermore, because the charges of Possession of a Firearm by a Violent Career Criminal and Possession of a Firearm by a Convicted Felon were related to the main

offenses, the court would not have severed these charges.
For these reasons, Defendant fails to show either error by
counsel or prejudice.   Accordingly, the claim raised is without
merit.

Ex. S at 332.   On appeal, the First DCA affirmed without a written opinion.

This constitutes a ruling on the merits and is entitled to AEDPA deference.

*See* 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 98-100.

The record supports the determination of the state post-conviction

court that the trial court bifurcated from the other charges the charges of

possession of a firearm by a violent career criminal and possession of a

firearm by a convicted felon.   *See* Ex. D at 286-88 (Verdict – Counts I, II,

III, IV, V, and VI), 289 (Verdict #2 – Counts VII and VIII, Possession of a

Firearm by a Violent Career Criminal and Possession of a Firearm by a

Convicted Felon, respectively).   Thus, as the post-conviction court

concluded, the jury did not know Pryor was a convicted felon until after

convicting him on the other charges, thereby achieving essentially the

same result Pryor complains his attorney should have sought.   *See, e.g.*,

Ex. J at 533-40 (discussion, while jury was out deliberating during first trial,

among judge and counsel for both sides regarding how to proceed if jury

returned verdict finding Pryor not guilty on all counts, after which court

determined that even if they found him not guilty, it would not necessarily

meant he did not possess a firearm and, therefore, they would proceed).

Petitioner Pryor has not shown that the state court's rejection of this claim involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this claim should be denied.

### <u>Ground 4</u>:   IAC – No Defense Witnesses

In his fourth claim, Petitioner Pryor argues his trial counsel provided ineffective assistance by not calling witnesses who were available at trial: Raymond Deats, Michelle Moldren, Salvacian Powell, and Jonathan Taylor. ECF No. 1 at 12-16.   The state post-conviction trial court summarily denied the claim, making the following findings:

> Defendant alleges that trial counsel was ineffective for failing to call witnesses during the trial.   In order to state a facially sufficient claim for failure to call a witness at trial, the movant must allege the following:   (1) the identity of the potential witness; (2) the substance of the witness's testimony; (3) an explanation of how the omission of the testimony prejudiced the outcome of the case; and, (4) a representation that the witness was available for trial.   <u>Leftwich v. State</u>, 954 So. 2d 714, 714 (Fla. 1st DCA 2007) (citing <u>Nelson v. State</u>, 875 So. 2d 579, 583-84 (Fla. 2004)).   Defendant has provided this information. However, none of the proposed testimony by the uncalled witnesses undermines the evidence presented by the State at either trial.   *See* Trial (June 2009) Transcript at 83-125, 130-170, 172-179, 190-209, 213-221, 224-289, 321-323, 394-420, 435-441, 446-484, 507-516; Trial (May 2011) Transcript at 56-130, 132-147, 149-152, 155-167, 176-200, 202-210, 214-281,

408-414, 421-422; Closing Arguments, Verdict and Sentencing
(May 2011) Transcript at 16-41, 67-76.   In particular, none of
the proposed testimony contradicts the testimony of Bruce
Davis, the person who helped Defendant dispose of the victim's
body.   For these reason[s], Defendant fails to show either error
by counsel or prejudice.   Accordingly, the claim raised is
without merit.

Ex. S at 169.   On appeal, the First DCA affirmed without a written opinion.

This constitutes a ruling on the merits and is entitled to AEDPA deference.

*See* 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 98-100.

The record supports the post-conviction court's determination that

none of the proposed testimony by Raymond Deats, Michelle Moldren,

Salvacian Powell, and Jonathan Taylor, contradicts the testimony of Bruce

Davis, who testified at the trial that he helped Pryor dispose of the victim's

body.   As to Raymond Deats, Pryor asserts he would have testified that he

was present at the Madison Pointe Apartment Complex on the evening of

the murder, that he heard a loud bang and went outside at which point "he

saw two males standing over a black male who was on the ground," and

"the two males that had been standing, pulled some items of clothing off of

the male who was on the ground and threw the items over a fence and then

they removed the male from the ground and placed him into a vehicle and

drove away."   ECF No. 1 at 13; *see* Ex. S at 52-54.   According to Pryor,

Deats "would have also testified that he saw Petitioner depart from the area and then return and commenced to pour some type of liquid on the area where the male had been lying."   ECF No. 1 at 13.   Pryor asserts this testimony "would have shown that State witness 'Woliver' was lying when he testified that he saw Petitioner shoot the victim, load him up in his truck and drive away."   *Id.*   Pryor also asserts this testimony would have "refuted the testimony of State Witness 'Reed' who testified that he was sure that the Petitioner was the driver of the truck and was also the person that he saw move the heavy object."   *Id.*

As to Michelle Moldren, Pryor asserts she would have testified that on the evening of the murder, between 6:30 p.m. and 7:30 p.m., "she and Salvacian Powell were sitting on her screened in porch, within the Madison Pointe Apartment Complex," and she heard "what sounded like gun shots and approximately five minutes later she saw a truck that (had been identified as the Petitioner's) pull into the access road the wrong way," that she yelled at the driver, and the driver of the truck was not Pryor, but rather the driver was "either a dark complexion white or Hispanic male with shorter, dark colored hair."   ECF No. 1 at 14; *see* Ex. S at 54-55.   Pryor says he has a bald head.   ECF No. 1 at 14.

Similarly, as to Salvacian Powell, Pryor asserts she would have testified that on the evening of the murder, between 6:30 p.m. and 7:30 p.m., "she and Michelle Moldren were sitting on Michelle Moldren's screened in porch, within the Madison Pointe Apartment Complex," and she heard "what sounded like gun shots and approximately five minutes later she saw a truck that (had been identified as the Petitioner's) pull into the access road the wrong way," that Michelle Moldren yelled at the driver, and the driver of the truck was not Pryor, but rather the driver was "either a dark complexion white or Hispanic male with shorter, dark colored hair." ECF No. 1 at 15; Ex. S at 55-57.

As to Jonathan Taylor, Pryor asserts he would have testified that on the day of the murder, "he was present at Building 'J' and that he was walking in the parking lot."   ECF No. 1 at 15; Ex. S at 57-59.   He would have also testified "that he was hearing impaired and the he did not hear any gun shots but that he did see two black men talking in the parking lot, and that they appeared to be in a confrontation of some type," with "one of the men holding what appeared to be a bat, and that the other male had what appeared to be a gun in one hand and something else in his other hand, which he could not identify."   ECF No. 1 at 15-16.   He would have

testified that "all of a sudden, the man with the bat, dropped the bat and did some type of maneuver and grabbed the gun from the other man, and the other man got down on the ground on one knee, and then, the man on the ground, threw something that he had been holding in his other hand, which hit the man with the gun and then rushed him and a tussle began."   *Id.* at 16.   Further, "[t]his witness would have provided that he walked off."   *Id.*

The record supports the state post-conviction court finding that the testimony of the witnesses proposed by Pryor does not contradict the testimony of Bruce Davis regarding the disposal of the victim's body.   In particular, at the trial, Davis testified that he was currently serving a prison sentence because he pled guilty to accessory after the fact to murder, in relation to this case.   Ex. N at 214-15.   He testified that he knew who Pryor was as Pryor owned a tree-cutting business and had hired him to climb trees on an as-needed basis.   *Id.* at 215-17.   He testified that he worked for Pryor on March 18, 2008.   *Id.* at 219-21.   At the end of the work day, one of the other men working with them got upset about the amount of money, $50, Pryor had paid him.   *Id.* at 221-22.   Davis left and the other man was still there with Pryor.   *Id.* at 223.   Pryor later showed up at the home where Davis was staying, around 7 or 7:30 p.m., close to

dusk.    *Id.* at 226.    Pryor told Davis he need help with the work truck, that

"the truck had a problem with the motor and he wanted to get rid of the

truck."    *Id.* at 227.    Pryor "wanted to burn the truck for insurance, so

insurance would pay for the replacement of the truck" and Davis agreed to

help him.    *Id.*    They made plans to meet, about 2:30 a.m., and Pryor

called him several times in the interim.    *Id.* at 229-30.    Davis drove a van

belonging to a friend to meet Pryor at Pryor's apartment, at the Madison

Pointe apartment complex; Davis had to go through a security gate, where

the attendant wrote down the license plate of the vehicle and his driver's

license.    *Id.* at 230-32.    When Davis arrived, Pryor was sitting in the dark

on the screened-in porch.    *Id.* at 232-33.    He told Davis a guy had

attacked him in his truck, he got in a fight, and the guy had a knife.    *Id.* at

233.    Pryor told him he stabbed the guy and threw him out; Pryor said he

did not know how bad the guy was hurt.    *Id.*    Pryor told Davis that if Davis

helped him, Pryor would take care of him "in monetary value."    *Id.* at 234.

They left in the van Davis drove and went to a Gate gas station, where

Pryor bought gas.    *Id.*    Davis testified they both went inside the Gate store

and Davis identified himself and Pryor on still photographs taken from the

store's security video, stamped as "3/19/08, 3:06 a.m."    *Id.* at 235-38.

After they left the Gate station, they went to a residence off 8th Avenue. *Id.* at 238.   Pryor got out of the van, walked to the end of the driveway, and pulled out his cell phone to use like a flashlight, looking underneath a large bush.   *Id.* at 239.   When Davis told him they needed to leave, Pryor said, "No, he's here somewhere, I can smell him."   *Id.*   Pryor then "walked over to where a gentleman was dead, laying on the ground."   *Id.*   Davis did not recognize the man.   *Id.*   Pryor told him they needed to move the body and Davis suggested taking it out to the woods.   *Id.* at 239-40.   They picked up the body and put it in the van.   *Id.* at 240.   They drove to a hunting area and Davis dragged the body off in the woods; on the way, Pryor took the dead man's shoes, wallet, and belt, and threw most of it, except the wallet, out the window.   *Id.* at 241-42.   They returned to Gainesville and Pryor drove the work truck to the place where Davis lived, so Davis could clean up the truck.   *Id.* at 243.   Pryor paid Davis $200 or $250.   *Id.* at 244.   Davis then described how he cleaned up the truck.   *Id.* at 244-48. The police ultimately stopped Davis and Davis provided them with the victim's wallet and took them to the location of the body.   *Id.* at 250.

Further, the record supports the state post-conviction court's finding that none of the proposed testimony undermines the evidence presented

by the State, including testimony of eyewitnesses and physical evidence. *See* Ex. M at 50, 53-68 (trial testimony of Eric Woliver that he was a neighbor of Pryor's; Pryor sold him a Glock nine-millimeter gun with a laser sight and a case of hollow-point bullets for $300 in early February 2008; about a month or month and a half later, Pryor asked for the gun back and Woliver returned it to Pryor; Pryor drove three different vehicles, a Ford dually pickup truck, a black Mercedes sedan, and a big excavation truck), 77-87 (testimony of Woliver that when he pulled into apartment complex on March 18, 2008, he observed Pryor with another man, a tall, slender black male wearing a blue hat; it was bright out and Woliver could see both men; the men appeared to be arguing but Woliver could not hear what they were saying; Pryor was holding a blue aluminum bat and tossed it on the ground; the other man was holding a beer bottle as if he were going to drink it; after Pryor tossed the bat on the ground, he pulled the gun, the same gun Woliver had bought from and returned to Pryor; Pryor told the man to get on the ground and the man threw the bottle at Pryor; the bottle landed near his feet; the man rushed at Pryor and grabbed the gun, but Pryor maintained possession of the gun; Pryor shot the gun four to six times in pretty quick succession; the man with the blue hat turned around and fell

down; Woliver felt overwhelmed as he had never seen anything like that; Pryor then walked toward Woliver and tossed Woliver the gun; Woliver saw Pryor drag the man toward an empty parking spot; Woliver put the gun on top of Pryor's toolbox; Pryor asked Woliver to help put the guy in the truck but Woliver did not do it; Woliver then saw Pryor drive away); 150-52 (trial testimony of Thomas Derbes regarding sale of gun by Prior to Woliver); 156-63 (trial testimony of Jacquelyn Jenkins, resident of Madison Pointe Apartments, that while walking her dog after work on March 18, 2008, she observed two African-American men, one with what looked like a metal pole walking toward the other, who was sitting on the back of a truck; the man with the pole was loud and very angry; the men appeared to be arguing; Ms. Jenkins then turned and walked around a corner and, about five minutes later, she heard two sounds that sounded like gunshots; on her way back to her apartment, she saw the man who had been carrying the pole and he was driving away in a pickup truck); Ex. N at 179-85 (trial testimony of John Reed that, shortly after he arrived home at Madison Pointe Apartments on March 18, 2008, he heard "about three or four loud pops or bangs"; he looked out from his apartment, down into the parking lot area, and saw Pryor's truck parked diagonally in the parking lot, Pryor was

"running back and forth, yelling" and Reed saw "a brown or tannish colored object laying on the ground," which Pryor picked up and put into the truck on the passenger's side, and then Pryor "sped off toward the front of the complex," but "about ten or 15 seconds later, . . . [he saw] the truck speed back up in reverse, pretty much back to the same spot," Pryor got out, when back to the passenger side and "struggled with something for a few moments" and "came out with what looked to be cloth in his hands, and threw it over the fence"; Pryor took out a bottle "of what appeared to be bleach" and "poured it on a wet spot that was on the ground in one of the parking spots"); Ex. O at 340-88 (trial testimony of Investigator Marc Woodmansee, from Gainesville Police Department, that he found bloodstains in parking lot of Madison Point Apartments as well as a clasp from a case for a Glock pistol; on the other side of the privacy fence near the parking lot, Woodmansee found a blue hat and two sweatshirts, as well as "some nine-millimeter ammunition," "[a] foam block with nine-millimeter ammunition," and two empty Clorox bleach containers; he observed the victim's autopsy including collection of victim's DNA, clothing victim was wearing at time of death, and removal of fired projectiles from body; victim had in his pocket a blood-soaked business card from Pryor's tree service;

victim's shirt had bullet hole in left breast pocket; swabs of blood were taken from Pryor's truck); 408-14 (trial testimony of Emily Haines, analyst in biology lab at Florida Department of Law Enforcement, that parking lot swabs, sweatshirt, truck swabs tested positive for victim's blood).     .

Petitioner Pryor has not shown that the state court's rejection of this claim involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this claim should be denied.

### <u>Ground 5</u>:   IAC – No Jurisdiction

In his fifth claim, Petitioner Pryor asserts his trial counsel provided ineffective assistance by not objecting and arguing the trial court did not have jurisdiction because his appeal was pending discretionary review in the Florida Supreme Court.   ECF No. 1 at 17-18.   The state post-conviction trial court summarily denied the claim, making the following findings:

> Defendant alleges that trial counsel was ineffective for failing to object and argue that the court did not have jurisdiction as Defendant's appeal was pending discretionary review in the Florida Supreme Court.   "[T]he pendency of a petition for review in the Florida Supreme Court does not deprive the trial court of jurisdiction to resentence a defendant pursuant to the district court's mandate reversing and remanding the case for resentencing." <u>Key v. State</u>, 638 So. 2d 1040, 1041-42 (Fla.

1st DCA 1994) (citing <u>State v. McKinnon</u>, 540 So. 2d 111, 113 (Fla. 1989) ("[A] party desiring a stay of mandate during the pendency of a petition for review in this Court, must apply to this Court for a stay, in accordance with Florida Rule of Appellate Procedure 9.130.   Otherwise the parties and the trial court must comply with the district court mandate.").   "In fact, the [Florida Supreme Court has] held that the parties and trial court must comply with the district court mandate absent a stay issued by [it]."   *Id.*   Here, the Florida Supreme Court did not issue a stay pending its consideration of the State's petition for review.   Thus, the trial court was required to follow the mandate of the First District Court of Appeal directing a new trial on the Second-Degree Murder charge.   Because the trial court had jurisdiction, counsel did not err by failing to raise jurisdiction as an issue.   Accordingly, the claim raised is without merit.

Ex. S at 170.   On appeal, the First DCA affirmed without a written opinion.

This constitutes a ruling on the merits and is entitled to AEDPA deference.

*See* 28 U.S.C. § 2254(d); <u>Harrington</u>, 562 U.S. at 98-100.

Petitioner Pryor has not shown that the state court's rejection of this claim involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.

*See* 28 U.S.C. § 2254(d)(1)-(2).   As the state post-conviction court explained, the trial court had jurisdiction even though Pryor had a pending petition for review in the Florida Supreme Court.   *See* <u>McKinnon</u>, 540 So. 2d at 113; <u>Key</u>, 638 So. 2d at 1041-42.   Indeed, absent a stay issued by the Florida Supreme Court or the First DCA, which did not occur in Pryor's

case, the trial court was required to follow the First DCA's mandate directing a new trial on the second degree murder charge.   *See* State v. Roberts, 661 So. 2d 821 (Fla. 1995).   Accordingly, defense counsel did not perform deficiently by not challenging the trial court's jurisdiction to hold the second trial.   This ground should be denied.

### Ground 6:   IAC – Inadequate Pretrial Investigation

In his sixth claim, Petitioner Pryor argues trial counsel provided ineffective assistance because he did not conduct an adequate pretrial investigation and, in particular, counsel did not subpoena the videotape from the Gate Food Store.   ECF No. 1 at 20.   The state post-conviction trial court summarily denied the claim, making the following findings:

> Defendant alleges that trial counsel was ineffective for failing to conduct adequate pretrial investigation.   According to Defendant, counsel should have presented the video from Gate convenience store, where Defendant and State witness Bruce Davis stopped during their disposal of the victim's body. However, the record reflects that the jury also saw the relevant stills from the video.   *See* Trial (May 2011) Transcript at 234 (lines 18-25) – 238 (lines 1-16), 446 (lines 2-22); State's Exhibits 13, 14, and 15.   It is not reasonable to believe that the jury would have reached a different outcome at trial had they seen the video versus seeing the stills from the video.   For these reasons, Defendant fails to show either error by counsel or prejudice.   Accordingly, the claim raised is without merit.

Ex. S at 170-71.   On appeal, the First DCA affirmed without a written

opinion.   This constitutes a ruling on the merits and is entitled to AEDPA

deference.   *See* 28 U.S.C. § 2254(d); <u>Harrington</u>, 562 U.S. at 98-100.

The state court record supports the post-conviction court's findings

that the jury saw the still photographs taken from the Gate store video.   Ex.

N at 234-238, Ex. O at 445-46.   The court did not unreasonably conclude

the jury would have reached a different outcome if they had seen the video

itself.

Petitioner Pryor has not shown the state court's rejection of this claim

was either (1) contrary to, or involved an unreasonable application of,

clearly established U.S. Supreme Court precedent, or (2) based on an

unreasonable determination of the facts in light of the evidence presented

in the state court proceeding.   *See* 28 U.S.C. § 2254(d)(1)-(2).   This claim

should be denied.

### Ground 7:   IAC – No Video Expert

In his seventh claim, Petitioner Pryor asserts his trial counsel

provided ineffective assistance because counsel did not request a video

expert to testify during the trial regarding the Gate Food Store video and

the photo stills taken from the video.   ECF No. 1 at 22.   The state post-

conviction trial court summarily denied the claim, making the following

findings:

> Defendant alleges that trial counsel was ineffective for failing to call a video expert to testify at trial.   According to Defendant, counsel should have called a video expert (Luke Smith) to testify that Defendant is not the person in the convenience store surveillance video.   However, at trial, the defense did not dispute the fact that Defendant is the person on the surveillance video with State witness Bruce Davis at the Gate station.   *See* Trial (May 2011) Transcript at 50 (lines 2-19), 62 (lines 10-14).   Furthermore, even if counsel had called a video expert, whether Defendant is on or not is a fact for the jury to decide, not the expert.   For these reasons, Defendant fails to show either error by counsel or prejudice.   Accordingly, the claim raised is without merit.

Ex. S at 171.   On appeal, the First DCA affirmed without a written opinion.

This constitutes a ruling on the merits and is entitled to AEDPA deference.

*See* 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 98-100.

The state court record supports the post-conviction court's findings that the defense did not dispute that Pryor is the person with Bruce Davis on the surveillance video from the Gate store.   *See* Ex. M at 42.   Even if defense counsel had called a video expert, whether Pryor appears on the video is a fact for the jury to determine, as the post-conviction court concluded.

Petitioner Pryor has not shown the state court's rejection of this claim was either (1) contrary to, or involved an unreasonable application of,

clearly established U.S. Supreme Court precedent, or (2) based on an

unreasonable determination of the facts in light of the evidence presented

in the state court proceeding.    *See* 28 U.S.C. § 2254(d)(1)-(2).    This claim

should be denied.

### Ground 8:   IAC – Faith Brady

In his eighth ground, Petitioner Pryor asserts defense counsel

provided ineffective assistance because he did not call Faith Brady to

testify during the trial.    ECF No. 1 at 24.    The state post-conviction trial

court summarily denied the claim, making the following findings:

> Defendant alleges that trial counsel was ineffective for failing to
> call Faith Brady to testify at trial.   In order to state a facially
> sufficient claim for failure to call a witness at trial, the movant
> must allege the following:   (1) the identity of the potential
> witness; (2) the substance of the witness's testimony; (3) an
> explanation of how the omission of the testimony prejudiced the
> outcome of the case; and, (4) a representation that the witness
> was available for trial.   Leftwich, 954 So. 2d at 714.
> Defendant has provided this information.   According to
> Defendant, Ms. Brady would have testified that she was
> working at the Gate station during the time that Bruce Davis
> indicated that he and Defendant were there (and on video);
> and, that Defendant was not the person in the video with Davis.
> However, there is no suggestion that Ms. Brady personally
> knew Defendant; or, would be able to identify him other than
> what is on the video (which speaks for itself).   Furthermore, at
> trial, the defense did not dispute the fact that Defendant is the
> person on the surveillance video with State witness Bruce
> Davis at the Gate station.   *See* Trial (May 2011) Transcript at
> 50 (lines 2-19), 62 (lines 10-14).   For these reasons,

> Defendant fails to show either error by counsel or prejudice.
> Accordingly, the claim raised is without merit.

Ex. S at 171-72.   On appeal, the First DCA affirmed without a written opinion.   This constitutes a ruling on the merits and is entitled to AEDPA deference.   *See* 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 98-100.

As with the analysis of Ground 7, *supra*, the state court record supports the post-conviction court's findings that the defense did not dispute that Pryor is the person with Bruce Davis on the surveillance video from the Gate store.   *See* Ex. M at 42.   Petitioner Pryor has not shown the state court's rejection of this claim was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   *See* 28 U.S.C. § 2254(d)(1)-(2).   This claim should be denied.

## Ground 9:   IAC – Police Misconduct

In his ninth ground, Petitioner Pryor argues defense counsel provided ineffective assistance because counsel did not object and move the court to dismiss the charges based on police misconduct in not providing the defense with the names of any witnesses Detective Barber spoke to while investigating the case.   ECF No. 1 at 26-27.   The state post-conviction

court summarily denied the claim, making the following findings:

> Defendant alleges that trial counsel was ineffective for failing to object and move the court for a dismissal based on police misconduct.   According to Defendant, counsel should have objected to, and moved for a dismissal based on, Detective Barber's testimony that he did not locate any witnesses who had relevant information.   *See* Trial (May 2011) Transcript at 302 (lines 2-8).   Defendant contends that law enforcement did not turn over the names of the persons whom they spoke with. However, the record reflects that they did.   *See* State's Discovery Exhibit.   Furthermore, in order to make a facially sufficient Brady[ v. Maryland, 373 U.S. 83 (1963),] claim, the defendant must prove the following:   (1) that the State possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and, (4) that had the evidence been disclosed to the defense, a reasonable probability exists that [the] outcome of the proceeding would have been different. Robinson v. State, 707 So. 2d 688, 693 (Fla. 1998).   Here, Defendant fails to show that the State failed to provide the names of any person with exculpatory information.   In addition, Defendant's neighbors were equally available to him to talk with about the crime as law enforcement.   For these reasons, Defendant fails to show that counsel erred by failing to object or move to dismiss the charges on the ground alleged. Accordingly, the claim raised is without merit.

Ex. S at 172-73 (footnote citing Brady omitted).   On appeal, the First DCA affirmed without a written opinion.   This constitutes a ruling on the merits and is entitled to AEDPA deference.   *See* 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 98-100.

The state court record supports the post-conviction court's determination that Pryor did not show the State failed to provide the names of any person with exculpatory information.   As the state court found, the record contains the State's Discovery Exhibit which lists several names of witnesses in the apartment complex.   Ex. S at 186-87.   Further, as the state court pointed out, Pryor's neighbors were equally available to the defense.

Petitioner Pryor has not shown the state court's rejection of this ground was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   *See* 28 U.S.C. § 2254(d)(1)-(2).   This ground should be denied.

### Ground 10:   IAC – Police Misconduct

In his tenth ground, Petitioner Pryor argues defense counsel provided ineffective assistance because counsel did not object and move the court to dismiss the charges based on the State's suppression of the security gate log from the Madison Point Apartments, where Petitioner lived.   ECF No. 1 at 28-29.   The state post-conviction court summarily denied the

claim, making the following findings:

> Defendant alleges that trial counsel was ineffective for failing to object and move the court for a dismissal based on the State's suppression of the security gate log from the Madison Point Apartments.   In order to make a facially sufficient <u>Brady</u> claim, the defendant must prove the following:   (1) that the State possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and, (4) that had the evidence been disclosed to the defense, a reasonable probability exists that [the] outcome of the proceeding would have been different.   <u>Robinson v. State</u>, 707 So. 2d 688, 693 (Fla. 1998).   Here, Defendant fails to show that the security gate log was suppressed.   First, the log was available to both the State and the defense.   *See* State's Discovery Exhibit; Trial (May 2011) Transcript at 202-204.   Second, as to Defendant's argument that the log does not show his vehicle on it, there is no reason why Defendant's vehicle would be on his apartment complex's security gate log because he lived there.   The log was to keep track of vehicles belonging to people coming into the complex who did not live there.   *Id.*   And, on that point, Defendant agrees that the log indicates that State witness Bruce Davis came through the security gate to go to his (Defendant's) apartment on the night/morning in question.   Thus, the log is not exculpatory.   For these reasons, Defendant fails to show either error by counsel or prejudice.   Accordingly, the claim raised is without merit.

Ex. S at 174-75 (footnote citing <u>Brady</u> omitted).   On appeal, the First DCA

affirmed without a written opinion.   This constitutes a ruling on the merits

and is entitled to AEDPA deference.   *See* 28 U.S.C. § 2254(d); <u>Harrington</u>,

562 U.S. at 98-100.

The state court record supports the post-conviction court's determination that Pryor has not shown the security gate log was suppressed.   Indeed, the log was evidently available to both the prosecution and the defense.   *See* Ex. N at 202-04, 208.   The State listed as a "Category B" witness, in its Discovery Exhibit, the Manager/Records Custodian for Madison Pointe Apartments.   Ex. S at 187.   Further, as the state court found, Petitioner agrees the log reflected Bruce Davis came through the complex's security gate on the night in question, to go to Pryor's residence.   Ex. N at 203-07; ECF No. 1 at 28.

Petitioner Pryor has not shown the state court's rejection of this ground was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   *See* 28 U.S.C. § 2254(d)(1)-(2).   This ground should be denied.

### Ground 11:   IAC – No Objection to Heather Troncale's Testimony

In his eleventh ground, Petitioner Pryor argues defense counsel provided ineffective assistance because counsel did not object to the improper testimony of Heather Troncale at trial.   ECF No. 1 at 31-33.   The

state post-conviction court summarily denied the claim, making the

following findings:

> Defendant alleges that trial counsel was ineffective for failing to object to State witness Heather Troncale's improper testimony. According to Defendant, her testimony at trial was based on hearsay and was not an "excited utterance."   *See* Trial (May 2011) Transcript at 132-136.   "An excited utterance, or a statement relating to a startling event or condition made while the declarant is under the stress of excitement caused by the event or condition," is a hearsay exception.   Thomas v. State, 125 So. 3d 928, 929-30 (Fla. 4th DCA 2013) review denied, 139 So. 3d 889 (Fla. 2014) (citing § 90.803(2), Fla. Stat. (2008)).   "Courts have interpreted the statute as requiring three elements for an excited utterance to be admissible: '(1) there must have been an event startling enough to cause nervous excitement; (2) the statement must have been made before there was time to contrive or misrepresent; and (3) the statement must have been made while the person was under the stress of excitement caused by the startling event.'" Thomas, 125 So. 3d at 929-30[] 889 (Fla. 2014) (quoting Mariano v. State, 933 So. 2d 111, 115 (Fla. 4th DCA 2006)). Here, Ms. Troncale's testimony about what she was told by Mr. Woliver would not have been hearsay because his statements to her were an "excited utterance."   For this reason, Defendant fails to show either error by counsel or prejudice.   Accordingly, the claim raised is without merit.

Ex. S at 173-74.   On appeal, the First DCA affirmed without a written

opinion.   This constitutes a ruling on the merits and is entitled to AEDPA

deference.   *See* 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 98-100.

The state court record supports the post-conviction court's findings

that Heather Troncale's testimony about what she was told by Eric Woliver

qualified as an "excited utterance" and thus constituted a hearsay

exception.   In particular, during the trial, Ms. Troncale testified that, in

March 2008, she and Mr. Woliver were dating.   Ex. M at 132-33.   She

testified that, on the night of March 18, 2008, Mr. Woliver called her and

"[h]e sounded shocked and really scared," and his voice sounded "frantic"

and "not calm at all."   *Id.* at 133.   He told her about events that had just

happened:

> Q.   What did he tell you then?
>
> A.   What did he tell me?
>
> Q.   Yes, ma'am?
>
> A.   He told me that he had seen a man holding a gun towards another man.
>
> Q.   Did he indicate that he saw anything else happen?
>
> A.   He said that he saw him shoot him, and then that was the end of what he saw.

*Id.* at 134.   The post-conviction court determined that even if defense

counsel had objected, the testimony would have been admissible as an

excited utterance.   *See* § 90.803(2) Fla. Stat. (providing that excited

utterances are not inadmissible hearsay).   Accordingly, the court

reasonably concluded defense counsel did not perform ineffectively by not

raising a futile hearsay objection.   *See, e.g.*, <u>Card v. Dugger</u>, 911 F.2d

1494, 1520 (11th Cir. 1990) ("Counsel cannot be labeled ineffective for

failing to raise issues which have no merit."); <u>Hamner v. Deputy Sec'y, Fla.</u>

<u>Dep't of Corr.</u>, 438 F. App'x 875, 880 (11th Cir. 2011) (explaining trial

counsel could not be deemed ineffective for failing to raise futile hearsay

objection to testimony that would have been admitted as excited utterance

under state law).

Petitioner Pryor has not shown the state court's rejection of this

ground was either (1) contrary to, or involved an unreasonable application

of, clearly established U.S. Supreme Court precedent, or (2) based on an

unreasonable determination of the facts in light of the evidence presented

in the state court proceeding.   *See* 28 U.S.C. § 2254(d)(1)-(2).   This

ground should be denied.

## <u>Ground 12</u>:   IAC – Cumulative

In his twelfth ground, Petitioner Pryor asserts the cumulative effect of

his trial counsel's errors resulted in him being deprived of effective

assistance of counsel.   ECF No. 1 at 34-35.   The state post-conviction

trial court summarily denied the claim, making the following findings:

> Defendant alleges that trial counsel was ineffective based on
> cumulative error.   A claim of cumulative error is unsuccessful if

> the movant fails to prove any of the individual errors that he
> alleges.   Suggs v. State, 923 So. 2d 419, 441 (Fla. 2005).   In
> the instant motion, none of Defendant's claims have merit.
> Accordingly, this claim is also without merit.

Ex. S at 175.   On appeal, the First DCA affirmed without a written opinion.

This constitutes a ruling on the merits and is entitled to AEDPA deference.

*See* 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 98-100.

Petitioner Pryor has not shown the state court's rejection of this claim

was either (1) contrary to, or involved an unreasonable application of,

clearly established U.S. Supreme Court precedent, or (2) based on an

unreasonable determination of the facts in light of the evidence presented

in the state court proceeding.   *See* 28 U.S.C. § 2254(d)(1)-(2).   Indeed,

the Eleventh Circuit has rejected an argument of cumulative error in the

context of IAC claims.   *See* Forrest v. Fla. Dep't of Corr., 342 F. App'x 560,

565 (11th Cir. 2009).   Moreover, as the state court explained, because

each individual ground fails, this ground likewise fails.

## Conclusion

Based on the foregoing, Petitioner Corey Bernard Pryor is not entitled

to federal habeas relief.   The § 2254 petition (ECF No. 1) should be

denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not

otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the

§ 2254 petition (ECF No. 1).   It is further **RECOMMENDED** that a

certificate of appealability be **DENIED** and that leave to appeal in forma

pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on March 28, 2018.

S/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).   A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Fed. R. Civ. P. 72(b)(2).   Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**